**SIGNED THIS: May 1, 2012**

_____
**Mary P. Gorman
United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| In Re ) | |
| ) | Case No. 11-71024 |
| KENT DEMOND DADE and ) | |
| DONYELLE R. DADE, ) | |
| ) | Chapter 7 |
| Debtors. ) | |
| _____ ) | |
| ) | |
| FIRST BANKERS TRUST ) | |
| COMPANY, N.A., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Adversary No. 11-7090 |
| ) | |
| KENT DEMOND DADE, ) | |
| ) | |
| Defendant. ) | |

# **O P I N I O N**

This matter is before the Court on the Motion of First Bankers Trust Company, N.A. ("FBT"), for Default Judgment with respect its two-count adversary Complaint seeking a nondischargeable judgment against Kent Demond Dade ("Debtor"). FBT's Complaint seeks to except from discharge a debt owed to FBT on the grounds that the Debtor obtained a loan from FBT by false representations, and that the ongoing sales by the Debtor of inventory which is FBT's collateral constitutes a willful and malicious injury to FBT. After the Debtor was served with summons and failed to timely answer or otherwise plead, FBT filed its Motion for Default Judgment. The Court then ordered FBT to file a prove-up affidavit to establish a *prima facie* case of nondischargeability. For the reasons set forth below, the Court finds that FBT has not made a *prima facie* case of nondischargeability as to either count of its Complaint. Accordingly, the Motion for Default Judgment will be denied. The Complaint will be set for evidentiary hearing, at which time FBT may appear and present its case in support of the entry of a nondischargeable judgment in its favor.

**Factual and Procedural History**

The facts in this case do not appear to be in dispute and, as set forth herein, are derived from affidavits and documents filed by FBT and from the schedules and Statement of Financial Affairs filed by the Debtor.

In July 2008, Debtor went to FBT to request a loan. Debtor met with Daron D. Duke, a commercial loan officer for FBT. Debtor is a firefighter employed by the City of Quincy, Illinois, and had invented a molded plastic wedge device to assist firefighters in quickly and easily shutting off automatic sprinkler systems when responding to fires. Debtor was interested in obtaining a loan from FBT to manufacture and market the device which he called the "Mul-T-Wedge." Debtor told Mr. Duke that he had retained a law firm in Missouri to set up a Missouri limited liability company

called Monjo Innovations, LLC (the "LLC"), that he had already applied for a patent for the Mul-T-Wedge, and that he expected that the patent would be issued shortly. His plan was for the LLC to manufacture and sell the device.

Debtor asked for a loan of $15,000 in order to pay for the creation of a mold for the Mul-T-Wedge and for manufacturing the product. He had arranged for a company in Missouri to make the product. Mr. Duke asked the Debtor to provide a financial statement, which Mr. Duke represented would also serve as a loan application, and to provide the LLC documents.

Debtor met again with Mr. Duke on August 4, 2008, at which time Debtor provided the requested documents. Mr. Duke then authorized the $15,000 loan. Mr. Duke prepared a Commercial Promissory Note for $15,000 with the LLC as borrower, a Commercial Security Agreement granting FBT a security interest in all personal property assets of the LLC, and a Commercial Loan Guaranty from the Debtor individually. All three documents were dated August 5, 2008, and signed on the same day. The terms of the Note provided for payment in full by one balloon payment on August 5, 2009.

The United States Patent and Trademark Office issued the Mul-T-Wedge patent to the Debtor on September 9, 2008.

On or about December 8, 2008, Mr. Duke again met with the Debtor at the Debtor's request. At that time, Debtor told Mr. Duke that the patent for the Mul-T-Wedge had been issued, but that the LLC needed additional funds to complete the manufacture of the first batch of the product. Mr. Duke then approved an additional loan advance of $5000 and revised the original loan to $20,000. Mr. Duke prepared a new Commercial Promissory Note for the principal amount of $20,000, which was then signed by the Debtor on behalf of the LLC on the same date. The loan was payable in monthly installments of $393.15 over 60 months.

Regular loan payments were made starting on January 20, 2009, and continued until

approximately June 30, 2010. At that time, Debtor contacted Mr. Duke to advise that, because someone working on the Mul-T-Wedge project with the Debtor had ordered a large and expensive amount of promotional materials, all of the LLC's income had to be used to pay this bill to avoid collection proceedings, leaving nothing to make the FBT loan payments. Mr. Duke then agreed to revise the payment term of the loan to a single-pay amount that would be due on March 15, 2011. A Change in Terms Agreement was prepared by Mr. Duke and executed by the Debtor on behalf of the LLC on June 30, 2010.

When the loan came due on March 15, 2011, Mr. Duke contacted the Debtor to arrange for the LLC to either pay the loan in full or restructure the loan. Debtor then advised that he was being forced to file bankruptcy because another creditor was threatening to obtain a wage deduction order against him, which would cause him to lose his job as a firefighter. Debtor and his wife, Donyelle R. Dade, filed a joint voluntary petition under Chapter 7 on April 20, 2011. FBT was listed on Schedule F as an unsecured nonpriority creditor with a claim of $18,172. As of May 16, 2011, FBT claims that the amount of $18,426.05, consisting of $17,115.81 unpaid principal, $1169.49 unpaid interest, and $140.75 accrued late charges, was due. On May 27, 2011, FBT sent a demand letter to the LLC in care of the Debtor and in care of Deena Humphrey, Registered Agent, demanding that all collateral covered by the Security Agreement be delivered to FBT by a certain date, to which FBT received no response. On October 14, 2011, FBT filed its two-count adversary Complaint.

Count I of the Complaint alleges that, "[b]oth in connection with his initial application for the Loan on December 12, 2008, and the subsequent modification of the Loan represented by the Change Agreement," Debtor represented to FBT that the LLC "owned or would own" the patent to the Mul-T-Wedge and all manufactured Mul-T-Wedge products and all proceeds from the sale of such products. FBT further contends that such representations were false inasmuch as the Debtor filed the patent application in his own name on October 6, 2006, the patent was issued to the Debtor

-4-

individually on September 9, 2008, at no time after that date was the patent assigned or otherwise transferred to the LLC, and that the Debtor disregarded the separate existence of the LLC and exercised control over all of the purported rights and assets of the LLC for his personal benefit. FBT further alleges that the false representations were material, and that it reasonably relied upon them in making the loan and entering into a security agreement with the LLC and, as a result, it has been damaged in the full amount of the loan.

Count II of the Complaint alleges that the Debtor sold a number of the Mul-T-Wedges in his possession and that he did not remit $2796.96 of the sales proceeds to FBT despite the fact that FBT has a security interest in all of the LLC's assets. FBT also contends that the Debtor has actual possession of over 100 Mul-T-Wedge units with a fair market value of at least $2495. Hence, Debtor's alleged conversion of the sale proceeds and his continued possession and control over the remaining inventory, notwithstanding the demand letter, amount to a willful and malicious injury to FBT in the total amount of $5291.96.

Debtor was properly served with summons, but failed to answer or otherwise plead to the Complaint. Accordingly, on December 12, 2011, FBT filed its Motion for Default Judgment. FBT seeks a judgment in the amount of $29,319.13, consisting of $17,115.81 unpaid principal, $1940.80 accrued interest, $140.75 accrued late charges, $8794.50 attorney fees, $561.00 post-judgment attorney fees (estimated), $543.27 costs and expenses, and $223.00 post-judgment court costs (estimated). On December 29, 2011, the Court entered an Order directing FBT to file a prove-up affidavit with sufficient facts to establish a *prima facie* case of nondischargeability. On March 2, 2012, FBT filed its Memorandum of Law in Support of Motion for Default Judgment along with several affidavits and other supporting documents. The matter is now ready for decision.

**Jurisdiction**

This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1334. The resolution of issues involving the dischargeability of debts are core proceedings. *See* 28 U.S.C. § 157(b)(2)(I).

**Legal Analysis**

**A. Default Judgment Standards**

The entry of default judgments is governed by Federal Rule of Civil Procedure 55, as made applicable to these proceedings by Federal Rule of Bankruptcy Procedure 7055. *See* Fed. R. Civ. P. 55; Fed. R. Bankr. P. 7055. A movant is not entitled to default judgment as a matter of right even though the debtor is in default for failing to answer or otherwise respond to a complaint. *AT&T Universal Card Servs. v. Sziel* (*In re Sziel*), 206 B.R. 490, 493 (Bankr. N.D. Ill. 1997) (citing *Wells Fargo Bank v. Beltran* (*In re Beltran*), 182 B.R. 820, 823 (B.A.P. 9th Cir. 1995)); *see also New Austin Roosevelt Currency Exch. v. Sanchez* (*In re Sanchez*), 277 B.R. 904, 907 (Bankr. N.D. Ill. 2002) (citing *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001)). The granting of a default judgment lies within the sound discretion of the court. *Merrill Lynch Mortg. Corp. v. Narayan*, 908 F.2d 246, 252 (7th Cir. 1990) (citing *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1322 (7th Cir. 1983)).

Default judgments are traditionally disfavored by most courts. *See, e.g.*, *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989) ("Default judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations."). However, panels in the Seventh Circuit "have eschewed traditional notions disfavoring default judgments." *Sanchez*, 277 B.R. at 907 (citing *Stafford v. Mesnik*, 63 F.3d 1445, 1450 (7th Cir. 1995)); *see also Profile Gear Corp. v. Foundry Allied Indus., Inc.*, 937 F.2d 351, 354 (7th Cir. 1991); *In re State Exch. Fin. Co.*, 896 F.2d 1104, 1106 (7th Cir. 1990).

Yet, in the context of bankruptcy, where a debtor has a presumptive right to a discharge, default motions should not be granted unless the movant demonstrates that its debt is nondischargeable as a matter of law. *Sanchez*, 277 B.R. at 907 (citing *Valley Oak Credit Union v. Villegas* (*In re Villegas*), 132 B.R. 742, 746 (B.A.P. 9th Cir. 1991)) (court must determine whether a plaintiff is entitled to judgment); *Lovell v. McArthur* (*In re McArthur*), 258 B.R. 741, 746 (Bankr. W.D. Ark. 2001) (noting that bankruptcy courts have taken a conservative approach and sometimes refrain from granting default judgment motions which deprive debtors of a discharge); *see also Attorneys' Title Ins. Fund, Inc. v. Zecevic* (*In re Zecevic*), 344 B.R. 572, 576 (Bankr. N.D. Ill. 2006).

The Complaint here is inadequate as a matter of law to support the entry of a nondischargeable default judgment. The allegations contained therein are simply too sparse. Further, as will be set forth in more detail below, when all of the affidavits and documents submitted in support of the Motion for Default Judgment are considered, even in the light most favorable to FBT, they fall well short of establishing a *prima facie* case for the entry of a nondischargeable judgment. FBT has not met its burden and, accordingly, in view of the standards this Court must follow in determining whether a nondischargeable default judgment should be entered, this Court must decline to enter the requested judgment.

### B. Count I - § 523(a)(2)(A)

Generally, a party seeking to establish an exception to the discharge of a debt bears the burden of proving each element of the exception by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 286-87 (1991). Exceptions to discharge are construed strictly against a creditor and liberally in favor of a debtor. *McClellan v. Cantrell*, 217 F.3d 890, 893 (7th Cir. 2000); *Goldberg Sec., Inc. v. Scarlata* (*In re Scarlata*), 979 F.2d 521, 524 (7th Cir. 1992).

Count I of FBT's Complaint is brought pursuant to Section 523(a)(2)(A) of the Bankruptcy

Code, which provides in relevant part:

>   (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—

>   * * * *

>   (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

>   (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]

11 U.S.C. § 523(a)(2)(A).

In order to prevail on a § 523(a)(2)(A) claim, a creditor must prove: (1) that a debtor obtained property from the creditor by making a false representation or omission which the debtor either knew was false or which the debtor made with reckless disregard for the truth; (2) that the debtor possessed an intent to deceive or defraud; and (3) that the creditor justifiably relied on the false representation. *See* 11 U.S.C. § 523(a)(2)(A); *Field v. Mans*, 516 U.S. 59, 74-75 (1995); *Reeves v. Davis* (*In re Davis*), 638 F.3d 549, 553 (7th Cir. 2011); *Ojeda v. Goldberg*, 599 F.3d 712, 716-17 (7th Cir. 2010).

For purposes of determining dischargeability under § 523(a)(2)(A), a debtor's representation must relate to a past or existing fact. *Capital Chevrolet v. Bullock* (*In re Bullock*), 317 B.R. 885, 889 (Bankr. M.D. Ala. 2004); *Hodgin v. Conlin* (*In re Conlin*), 294 B.R. 88, 100 (Bankr. D. Minn. 2003); *Bank of Commerce v. Hoyt* (*In re Hoyt*), 277 B.R. 121, 132 (Bankr. N.D. Okla. 2002). A debtor's intent to deceive is measured by the debtor's subjective intent at the time the alleged misrepresentation was made. *Zamora v. Jacobs* (*In re Jacobs*), 448 B.R. 453, 472 (Bankr. N.D. Ill. 2011). "Statement," within the context of § 523(a)(2)(A), means an allegation or declaration of matters of fact. *Westcott v. Redburn* (*In re Redburn*), 202 B.R. 917, 927 (Bankr. W.D. Mich. 1996).

-8-

A statement of an intent to perform an act in the future will not generally form a basis for a finding of nondischargeability under § 523(a)(2)(A) unless a creditor can establish that the debtor lacked a subjective intent to perform the act at the time the statement was made. *Brann v. Oxford* (*In re Oxford*), 440 B.R. 772, 777 (Bankr. W.D. Ky. 2010); *Duncan v. Bucciarelli* (*In re Bucciarelli*), 429 B.R. 372, 375 (Bankr. N.D. Ga. 2010); *Lewis v. Mathis* (*In re Mathis*), 360 B.R. 662, 666 (Bankr. C.D. Ill. 2006); *Mozeika v. Townsley* (*In re Townsley*), 195 B.R. 54, 61 (Bankr. E.D. Tex. 1996). To be actionable under § 523(a)(2)(A), a representation must be one of existing fact and not merely an expression of opinion, expectation, or declaration of intention. *Rawat v. Hamil* (*In re Hamil*), 453 B.R. 812, 814 (Bankr. W.D. Va. 2011); *Hoyt*, 277 B.R. at 132; *Townsley*, 195 B.R. at 61.

As a preliminary matter, the Court finds FBT's Complaint somewhat misleading in that it refers only to the Note dated December 12, 2008, and the Change Agreement dated June 30, 2010, and fails to mention the original loan, which was made on August 5, 2008. In fact, the Complaint specifically refers to the loan of December 12, 2008, as the "initial application" when, in fact, the initial application was made in August 2008. The fact that the parties had a debtor/creditor relationship which began in August 2008 as opposed to December 2008 is important because the Mul-T-Wedge patent was issued to the Debtor on September 9, 2008. Nowhere does FBT allege that the Debtor misrepresented when or if the patent was or had been issued. Thus, inferentially, FBT made the initial August 5, 2008, loan to Debtor knowing that no patent for the Mul-T-Wedge had yet been issued to any person or entity.

In its Complaint and in its Memorandum of Law in Support of the Motion for Default Judgment, FBT asserts that the Debtor misrepresented "that the LLC owned, or would own, the patent to the Mul-T-Wedge, and all manufactured Mul-T-Wedge products and all proceeds from the

sale of such products." In a supporting affidavit, Mr. Duke says that the Debtor told him that the patent "would be owned by the LLC." FBT does not — most likely because it cannot — contend that the Debtor ever stated that the LLC actually owned the patent. To the contrary, when the initial loan was made, the patent had not been issued and Mr. Duke knew that. Thus, at best, he had a promise from that Debtor that if a patent was ever issued, it would be owned by the LLC. A declaration of intention to do something in the future, without evidence of a lack of subjective intent not to do it at the time the declaration is made, is not actionable under § 523(a)(2)(A). *See Mathis*, 360 B.R. at 666. Here, there is no evidence that the Debtor did not intend to have the LLC eventually own the patent or that he had any intent to deceive or defraud FBT regarding the ownership issue when he applied for the loan.

FBT consistently qualifies what it claims the Debtor said about the ownership of the patent by acknowledging that the Debtor's statements related to what would occur in the future rather than what had already occurred. Thus, even if the Court accepts as true that the Debtor represented "that the LLC owned, or would own, the patent," FBT has, as a matter of law, failed to present a *prima facie* case under § 523(a)(2)(A) against the Debtor because the statement contemplates, at least in one of its two alternatives, a promise to do something in the future. FBT does not allege or provide any evidence that the Debtor never intended to transfer the patent to the LLC when the loan was originally made. Further, there is no evidence that the Debtor intended to deceive or defraud FBT in obtaining the loan for the LLC. Nothing presented so far would allow this Court to draw any inference of an intent on the part of the Debtor to deceive FBT.

Having found no actionable misrepresentation, the issue of justifiable reliance need not be reached. However, the factual recitation and chronology of events set forth in the First Supplemental

Affidavit of Daron D. Duke cast doubt on FBT's contention that it relied on anything the Debtor represented about his business plans. When the first loan was made, the patent had not been issued. The loan was modest in amount. The Debtor was employed full-time as a firefighter. The Debtor signed a personal guaranty on the loan. FBT also obtained a Personal Financial Statement from the Debtor prior to making the loan. If the Debtor's contemplated business venture turned out to be a failure, the value of the patent and any inventory could not possibly provide much cover to FBT. Accordingly, it is unlikely that the forward-looking statements which Debtor allegedly made were relied upon by FBT.

For the aforementioned reasons, FBT's Motion for Default Judgment is denied as to Count I. Although it seems unlikely that FBT has significantly more evidence to present that for some reason it left out of the affidavits submitted in support of the Motion for Default Judgment, this Court will not dismiss Count I at this time. Rather, an evidentiary hearing will be set and FBT may attempt at that time to prove up its entitlement to a nondischargeable judgment.

### C. Count II - § 523(a)(6)

Count II of FBT's Complaint is brought pursuant to Section 523(a)(6) of the Bankruptcy Code, which provides in relevant part:

> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—
>
> * * * *
>
> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity[.]

11 U.S.C. § 523(a)(6).

In order to prevail on a § 523(a)(6) claim, a creditor must prove (1) that the debtor caused an injury, (2) that the debtor's actions were willful, and (3) that the debtor's actions were malicious. *See* 11 U.S.C. § 523(a)(6); *French, Kezelis & Kominiarek, P.C. v. Carlson* (*In re Carlson*), 224 B.R. 659, 662 (Bankr. N.D. Ill. 1998) (citation omitted), *aff'd* 2000 WL 226706 (N.D. Ill. 2000), *aff'd*, 2001 WL 1313652 (7th Cir. 2001). "Willful" means intent to cause injury, not merely the commission of an intentional act that leads to injury. *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). Under *Geiger*, to prove nondischargeability of a debt under § 523(a)(6), a creditor must show that the debtor actually intended to harm the creditor and not merely that the debtor acted intentionally and the creditor was thus harmed. *Id.* at 61-62. The debtor must have intended the consequences of his act. *Id.*

A debtor's conversion of a secured creditor's collateral can support a finding of nondischargeability under 11 U.S.C. § 523(a)(6). *Nat'l Bank v. Buckley* (*In re Buckley*), 2009 WL 400628, at *2 (Bankr. C.D. Ill. Feb. 17, 2009). Willfulness is established by proof that the debtor intended to improperly dispose of the creditor's collateral and used the proceeds for purposes other than payment of the secured debt. *ABF, Inc. v. Russell* (*In re Russell*), 262 B.R. 449, 455 (Bankr. N.D. Ind. 2001). Malice is established where the debtor either intended to harm the secured creditor or was aware that the creditor would be harmed by his actions. *See Petralia v. Jercich* (*In re Jercich*), 238 F.3d 1202, 1209 (9th Cir. 2001). These elements can be established through evidence that a debtor knew of the creditor's security interest but nonetheless sold collateral and failed to remit the proceeds to the creditor.

Where the collateral is inventory, however, the issue becomes less clear cut. Inasmuch as it is the sale of inventory that generates cash flow needed to fund business operations, the sale of inventory in the regular course of business of a going concern, and the use of the proceeds to pay ordinary business debts, is not usually an act of conversion against the lender who has an inventory

lien. *See Farmers State Bank of W. Ill. v. Simpson* (*In re Simpson*), 2010 WL 1521309, at *2 (Bankr. C.D. Ill. Apr. 14, 2010) (Perkins, J.). It is generally recognized that the regular course of dealing between the lender and borrower constitutes the lender's implied consent to the sale of inventory. *Id.* (citation omitted).

In Count II of its Complaint, FBT asserts that the Debtor has willfully converted $2796.96 in net proceeds from the sale of Mul-T-Wedges and that he has over 100 of the units in his possession. This conversion of sale proceeds and continued possession and control of over 100 Mul-T-Wedge units, FBT contends, amounts to a "willful and malicious injury to the property of [FBT]."

The facts plead and the evidence offered by FBT fall far short of the threshold for a *prima facie* finding of nondischargeability under post-*Geiger* § 523(a)(6). All of the conduct complained of — some of which occurred post-petition — consists of the Debtor continuing to operate the LLC's business. The Debtor is alleged to have received funds for the sale of product, deposited the funds into the LLC's bank account at FBT, and then withdrawn the funds. The Debtor told FBT while he was under oath that he used the funds withdrawn to pay bills and no evidence to the contrary has been presented. From what can be garnered from the record, it appears that the LLC still exists, has inventory (which may well be in the Debtor's possession), and remains a going concern. The LLC is not a debtor in bankruptcy. And, the principal borrower referenced in the Note and Change Agreement which are the subject of this adversary proceeding is the LLC, not the Debtor personally. Thus, FBT's remedy — if it is entitled to one — is not in this Court and, most likely, not against the Debtor personally. FBT may exercise its state court remedies to recover the remaining assets of the LLC in which it has a secured interest. Neither the fact that FBT has not acted to recover the assets before now, nor the fact that the Debtor has not voluntarily surrendered the assets of his LLC, results in the imposition of nondischargeable liability on the Debtor.

For the reasons set forth above, FBT's Motion for Default Judgment as to Count II is denied.

Although it is difficult to imagine a set of circumstances under which FBT might prevail on Count II, the Court will not dismiss Count II at this time. Count II will be set for hearing along with Count I.

**Conclusion**

Complaints to determine the dischargeability of debt under § 523(a)(2)(A) will only be successful when there is proof of a debtor's fraudulent conduct and fraudulent intent at the time that a loan is made. Simple breaches of contract or failures to pay do not morph into fraudulent conduct based on hindsight analysis. Here, neither Count I of the Complaint nor the affidavits and documents submitted provide any evidence of actual fraudulent conduct or intent and provide no evidence from which any inference of fraud or fraudulent intent can be drawn.

Complaints to determine the dischargeability of debt under § 523(a)(6) will only be successful — post-*Geiger* — where there is proof of a debtor's intent to injure the creditor. Here, neither Count II of the Complaint nor the affidavits and documents submitted provide any evidence of such intent by the Debtor. To the contrary, the evidence simply suggests that the Debtor continues to operate the business of the LLC in the ordinary course, and that FBT, although annoyed at the continued operation, has taken no steps to exercise the remedies available to it under state law to shut down the business.

For the reasons set forth above, FBT's Motion for Default Judgment must be denied.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###